**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>(4) JAMES ADAMS,<br>    A/K/A "JIMMY,"<br><br>Defendant. | Case No. 24-cr-10121-FDS |

**DEFENDANT JAMES ADAMS'S SENTENCING MEMORANDUM**

Pursuant to a Rule 11(c)(1)(C) plea agreement, Defendant James Adams ("Mr. Adams")

accepted responsibility and pleaded guilty to two counts of the superseding indictment.[1]  ECF 30,

137.  The agreement calls for a sentence of:  151 months incarceration, 5 years supervised

release, a fine within the guidelines sentencing range (unless the Court finds Mr. Adams is not

able—and not likely to become able—to pay a fine), and a mandatory special assessment of

$200.  ECF 137.

Mr. Adams submits this memorandum with respect to the application of 18 U.S.C. §

3553(a) to the facts and circumstances of his offense.  For the reasons set forth in the

memorandum and to be discussed at the sentencing hearing, Mr. Adams respectfully requests

that the Court impose the agreed-upon sentence.[2,3]  Such sentence is sufficient but not greater

---

[1] Specifically, Mr. Adams pleaded guilty to:  (1) Count II of the Superseding Indictment – Conspiracy to Distribute and to Possess with Intent to Distribute 50 Grams or more of Methamphetamine; and (2) Count III of the Superseding Indictment – Possession with Intent to Distribute, and Distribution of, 50 Grams or More of Methamphetamine.  ECF 137.

[2] Because Mr. Adams is not able—and is not likely to become able—to pay a fine, Mr. Adams respectfully requests that the Court impose no fine as part of any sentence.

[3] Mr. Adams was detained in state custody on February 8, 2024 on a related state drug offense.  He was transferred to federal custody on November 21, 2024.  Mr. Adams's state drug offense is a part of Mr. Adams's involvement in

1

than necessary to achieve the goals of sentencing.  *See* 18 U.S.C. § 3553(a).  Mr. Adams also respectfully requests that the Court include in his sentence a recommendation to the Bureau of Prisons ("BoP") that Mr. Adams be admitted to BoP's 500-hour Residential Drug Abuse Treatment Program ("RDAP").

## I.    Introduction

Mr. Adams first used crystal methamphetamine in the seventh grade—something he typically did while spending time at his father's motorcycle shop.  Thereafter, Mr. Adams abused a myriad of drugs.  He dropped out of high school.  And he was frequently incarcerated—often committing crimes to fuel his drug addictions.  As Mr. Adams's addiction issues worsened, so did his legal troubles.

Mr. Adams has come to sincerely regret his poor life choices.  He now faces his most significant term of incarceration.  But rather than dwell on his bad decisions, Mr. Adams finally appears ready to move forward in a new direction.  With the parties' agreed-upon sentence and with the resources offered by BoP, Mr. Adams can break his cyclical involvement with the criminal justice system.  And he can become the man that he is capable of being—one who is a positive, productive member of society.  After sentencing, it will be up to Mr. Adams to make the most of the opportunities that accompany the agreed-upon sentence.

---

the federal drug conspiracy charged in Count II.  Accordingly, Mr. Adams respectfully requests that the Court credit him with time served dating back to February 8, 2024.

**II.    The Parties' Agreed-Upon Sentence is Sufficient but not Greater than Necessary to Achieve the Goals of 18 U.S.C. § 3553(a).**

**1.    The History and Characteristics of the Defendant and the Nature and Circumstances of the Offense**

A.    The History and Characteristics of the Defendant

Mr. Adams is forty-three years old.  PSR ¶ 85.  He was born in Salem to his mother, Eileen Brenahan, and his father, James Adams Sr.  *Id*.  Mr. Adams is the youngest of three children.[4]  *Id*. ¶¶ 89-90.

Mr. Adams had a tumultuous childhood.  *See* PSR ¶¶ 85-86, 105, 111-15.  Despite the many challenge circumstances, he credits the positive aspects of his childhood to his mother.  She was Mr. Adams's "number one cheerleader."  *Id*. ¶ 85.  She worked long hours at three different jobs to financially support Mr. Adams and his sisters.  *Id*.  And she made tireless efforts to keep Mr. Adams on the right path—enrolling him in youth sports in the hope of keeping Mr. Adams away from the negative adult influences that surrounded him.  *Id*.

Despite sharing a close relationship with his mother, Mr. Adams's relationship with his father was a difficult one.  PSR ¶ 85.  From a very young age, Mr. Adams witnessed his father physically and emotionally abuse his mother.  *Id*.  The abuse led to his parents' separation when Mr. Adams was only a child.  *See id*.  Thereafter, Mr. Adam's father was never a consistent presence in Mr. Adams's life—in part because his father had legal troubles of his own.  *Id*.

Mr. Adams's father had severe addiction issues.  PSR ¶ 86.  Mr. Adams recalls spending time as a child at his father's motorcycle shop, where he frequently saw his father and his father's friends use drugs.  *Id*.  Mr. Adams's own drug use began at a young age, as a result of his time at the motorcycle shop.  PSR ¶ 112.  At eleven years old, Mr. Adams drank alcohol and

---

[4] Mr. Adams has two older sisters, both of whom live close by and remain supportive of him.  PSR ¶¶ 89-90.

smoked marijuana for the first time.  PSR ¶¶ 112-13.  Mr. Adams began using cocaine and crystal methamphetamine in the seventh grade.  *Id.* ¶¶ 114-15.  He typically used crystal methamphetamine at his father's motorcycle shop.  *Id.* ¶ 115.  Throughout high school, Mr. Adams used cocaine daily.  *Id.* ¶ 114.  Because of his drug use and behavioral issues at school, Mr. Adams dropped out after his sophomore year.[5]  PSR ¶ 123.  After dropping out, Mr. Adams obtained a job at his father's motorcycle shop.  *Id.*  From there, his drug use worsened.  Between sixteen and twenty years old, Mr. Adams used opiates (such as heroin), stimulants (such as methamphetamine and cocaine), and other drugs (such as Xanax)—on a daily basis.[6]  PSR ¶¶ 111, 115.  He suffered multiple overdoses.  *Id.* ¶ 117.

With Mr. Adams's drug use came frequent incarcerations.  *See* PSR ¶¶ 51-83. Unfortunately, each time Mr. Adams was released, he resumed abusing drugs.  *Id.* ¶ 120.  And he once again found himself down "a bad path of self-destruction," choosing to commit additional crimes to fund his addictions.  *Id.*

B.    The Nature and Circumstances of the Offense

Mr. Adams's instant offenses relate to his involvement in a conspiracy to distribute methamphetamine throughout the North Shore.  PSR ¶ 11.  Between November 1, 2023 and January 10, 2024, a cooperating witness purchased methamphetamine from Mr. Adams on four occasions.[7]  *Id.* ¶¶ 14-28.

On February 8, 2024, Mr. Adams was arrested by the Newburyport Police Department, after an officer seized methamphetamine from Mr. Adams's car during a traffic stop.  PSR ¶ 1.

---

[5] Years later, Mr. Adams was able to obtain his GED.  PSR ¶ 123.

[6] Mr. Adams also experimented with ketamine, acid, and ecstasy.  PSR ¶ 116.

[7] As part of the drug conspiracy, Mr. Adams also had varying involvement in two other controlled purchases on November 8, 2023 and February 19, 2024.  PSR ¶¶ 18, 25-28.  However, Mr. Adams did not transfer the drugs to the cooperating witness on either occasion.  *Id.*

Mr. Adams was detained and charged with Trafficking 18 Grams or more of Methamphetamine. PSR ¶ 71; *Commonwealth v. James Adams*, Newburyport District Court Criminal Docket No. 2422CR000142.  On May 1, 2024, Mr. Adams pleaded guilty to the lesser included offense of Possession with Intent to Distribute a Class B Substance.  *See* Dkt No. 10, *Commonwealth v. James Adams*, Newburyport District Court Criminal Docket No. 2422CR000142.  And he was sentenced to 18 months in the House of Corrections.  *Id*.

On September 18, 2024, Mr. Adams was indicted federally and charged with one count of Conspiracy to Distribute 50 Grams or more of Methamphetamine, and one count of Possession with Intent to Distribute, and Distribution of, 50 Grams or more of Methamphetamine.  ECF 30.  On November 21, 2024, Mr. Adams completed his state prison sentence.  PSR ¶ 3.  He was transferred to federal custody, where he has remained since.  *Id*.

Mr. Adams's February 8, 2024 Newburyport District Court drug offense is a part of the charged federal drug conspiracy.  PSR ¶¶ 22-24.  The 19.5 grams of methamphetamine from the February 8, 2024 traffic stop are included in the total drug weight attributed to Mr. Adams.  *Id*. ¶¶ 40-41.  Accordingly, as part of any sentence imposed, Mr. Adams respectfully requests a recommendation from the Court that BoP credit Mr. Adams with time served for his time in state custody—dating back to February 8, 2024.  *See United States v. Mojabi*, 161 F.Supp.2d 33, 36 (D. Mass. 2001) (district courts "may make recommendations to the BOP at sentence" as to the amount of credit for time served).

**2.     Just Punishment and Deterrence**

A sentence of 151 months incarceration, 5 years of supervised release, no fine, and a mandatory special assessment of $200, is a significant sentence that will "reflect the seriousness of the offense," "promote respect for the law," "provide just punishment," "afford adequate

deterrence to criminal conduct," and "adequately protect the public" from any future crimes of Mr. Adams. *See* 18 U.S.C. § 3553(a).

If the Court accepts the parties' Rule 11(c)(1)(C) plea agreement, the Court will impose a term of incarceration of 151 months. That penalty is far greater than any penalty Mr. Adams has faced in any prior criminal proceeding. It is hoped that this sentence will deter future criminal conduct by Mr. Adams.

In addition, the agreed-upon sentence is consistent with the penalty already imposed on one of Mr. Adams's co-defendants, Danielle Steenbruggen. She received a term of incarceration of 93 months. ECF 125. Although Ms. Steenbruggen played a similar role to Mr. Adams in the drug conspiracy, Mr. Adams has a more extensive criminal history.[8] The additional 58 months of incarceration that Mr. Adams faces is sufficient—but not greater than necessary—to serve as a just punishment, in light of his past convictions.

Finally, in addition to the agreed-upon sentence, Mr. Adams has requested a recommendation from the Court that he be admitted to RDAP. Through his participation in RDAP, and an effective substance abuse treatment plan, Mr. Adams will gain tools to cope with his crippling addiction issues. There is hope that he may also substantially reduce his likelihood of recidivism. *See* Kristin M. Tennyson, Ph.D. et al., *Recidivism and Federal Bureau of Prisons Programs: Drug Program Participants Released in 2010*, p. 5, U.S. Sentencing Commission, May 2022, https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2022/20220517_Recidivism-BOP-Drugs.pdf, (study showed that RDAP program caused "a significant reduction in the likelihood of recidivism for offenders who completed" the

---

[8] Co-defendant Danielle Steenbruggen fell within Criminal History Category III. ECF 122. Mr. Adams falls within Criminal History Category VI. PSR ¶ 74.

program in comparison to eligible offenders who did not complete or did not participate in the program).

### 3.    The Kinds of Sentences Available and the Sentencing Guidelines

A.  <u>The Parties' Binding Rule 11(c)(1)(C) Plea Agreement</u>

On December 5, 2025, the parties entered into a Rule 11(c)(1)(C) plea agreement, in which Mr. Adams pleaded guilty to two counts charged in the superseding indictment—(1) Count II – Conspiracy to Distribute and to Possess with Intent to Distribute 50 Grams or more of Methamphetamine; and (2) Count III – Possession with Intent to Distribute, and Distribution of, 50 Grams or more of Methamphetamine.  ECF 137.  For each count, Mr. Adams faces a mandatory minimum sentence of 120 months incarceration and five years of supervised release. *Id*.  The parties' agreed on the following sentence:  concurrent sentences of 151 months incarceration, 5 years supervised release, a fine within the guidelines sentencing range (unless the Court finds Mr. Adams is not able—and not likely to become able—to pay a fine), and a mandatory special assessment of $200.  *Id*.

B.  <u>Sentencing Guidelines</u>

Mr. Adams agrees that his Total Offense Level is 33 and he has a Criminal History Category of VI.  The Total Offense Level is calculated as follows:

**Base Offense Level (34) (Defendant Accountable for at Least 500 Grams, but Less than 1.5 Kilograms of Methamphetamine)**

*See* USSG §§ 2D1.1(a)(5) and (c)(3)

**Specific Offense Characteristics (+2) (Defendant Maintained Premise for Distributing a Controlled Substance)**

*See* USSG §§ 2D1.1(b)(12)

**Acceptance of Responsibility (-3)**

*See* USSG §§ 3E1.1(a)-(b)

**Total Offense Level: 33**

For individuals with a Criminal History Category of VI and a Total Offense Level of 33, the sentencing guidelines recommend a term of incarceration of 235-293 months. *See* USSG § 5A (Sentencing Table).

### C. JSIN Data

The United States Probation Office provides Judiciary Sentencing Information ("JSIN") statistics on the sentences for individuals whose primary guideline was USSG § 2D1.1, Methamphetamine (actual) was the primary drug type, the Total Offense Level was 33, and the individual's Criminal History Category was Category VI. PSR ¶ 157. There are 265 individuals who matched that criteria, after excluding any individual who received a USSG § 5K1.1 substantial assistance departure. *Id.* All 265 individuals received a sentence of imprisonment. *Id.* The average sentence was 174 months. *Id.* The median sentence was 180 months. *Id.*

The JSIN statistics are a useful tool. They help avoid disparate sentences. However, they are not perfect. The statistics are limited in time—dating back only to 2020. And they do not account for the unique characteristics and circumstances of an individual defendant—for example, Mr. Adams's difficult childhood and severe addiction issues. While the median and average sentences for similarly situated defendants are slightly higher than the parties agreed-upon sentence, those statistics are only one factor for the Court to consider in determining whether the parties' agreed-upon sentence is sufficient—but not greater than necessary—to achieve the goals of 18 U.S.C. § 3553(a).

**4.      Grounds for a Sentence Below the Guidelines**

A sentence of 151 months incarceration, 5 years of supervised release, no fine, and a mandatory special assessment of $200, is sufficient but not greater than necessary to achieve the varied goals of 18 U.S.C. § 3553(a).  As this Court is well-aware, the guidelines are "merely advisory, which means that a district court has considerable leeway to impose a sentence that falls outside the range suggested." *United States v. Robinson*, 433 F.3d 31, 35 (1st Cir. 2005).

The parties' agreed-upon sentence—though below the guidelines—is an appropriate one. It includes a significant term of incarceration—one that renders this case a wake-up call for Mr. Adams.  The long period of incarceration reflects the seriousness of Mr. Adams's offenses while giving Mr. Adams the opportunity to obtain much-needed substance abuse treatment on a more consistent basis.  Mr. Adams knows that his addiction struggles do not excuse his criminal conduct.  But he recognizes that controlling those addictions is the key to his future success.

Mr. Adams has the ability to be a positive influence in society.  When sober, he's thrived—whether it be as a mechanic, a commercial truck driver, or a welder.  *See* PSR ¶ 125. While incarcerated, Mr. Adams hopes to gain the tools that are necessary to move forward on a positive path.  So far, Mr. Adams has been committed to that goal.  Since being transferred to federal custody, Mr. Adams has completed a number of programs offered by Wyatt.  *See* Certificates of Completion attached hereto as Exhibit A.  And he has expressed interest in many more.  *See* PSR ¶ 127 (discussing Mr. Adams's work as a "pod runner" at Wyatt and his application to work in Wyatt's barbershop).

Finally, at age 43, Mr. Adams appears ready for change.  He understands that this case may be his last opportunity to end the cycle of drug use, crime, and incarceration.  Ultimately, it

9

is up to Mr. Adams to seize that opportunity and turn his life around. In all likelihood, the agreed-upon sentence will give him his last chance to do that.

## III.    Conclusion

For the reasons explained above and to be discussed at the sentencing hearing, Mr. Adams respectfully requests that the Court impose a sentence of 151 months incarceration, 5 years supervised release, no fine, and a mandatory special assessment of $200.

Respectfully submitted,

/s/ *George W. Vien*
George W. Vien (BBO #547411)
Pietro A. Conte (BBO #707055)
DONNELLY, CONROY & GELHAAR, LLP
260 Franklin Street, Suite 1600
Boston, Massachusetts 02110
T: (617) 720-2880
F: (617) 720-3554
gwv@dcglaw.com
pac@dcglaw.com

Dated: March 16, 2026

## **CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), on March 16, 2026.

*/s/ Pietro A. Conte*
Pietro A. Conte